IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| PATRICK JAMES, SR., | ) | |
| | ) | No. 1:15cv00062-EJM |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CEDAR RAPIDS, IOWA; | ) | **DEFENDANT'S REPLY TO** |
| GRANT RASMUSSEN, individually and as a | ) | **"PLAINTIFF'S STATEMENT** |
| Police Officer for the City of Cedar Rapids, | ) | **OF ADDITIONAL MATERIAL** |
| Iowa; and BRUCE PAYNE, individually and | ) | **FACTS PRECLUDING** |
| as a Police Officer for the City of Cedar Rapids, | ) | **SUMMARY JUDGMENT"** |
| Iowa, | ) | |
| | ) | |
| Defendants | ) | |

Pursuant to LR 56(d), Defendants file this reply to Plaintiff's Statement of Additional Facts. For ease of reference, responses are set out after each of Plaintiff's statements.

1. The warrant information available to the Defendants Rasmussen and Payne prior to handcuffing James, Sr. included, beyond just the name and address, the fact that "JAMES PATRICK DERON, JR" was 20 years old, 5'11" tall and weighed 190 pounds. Def. App. 6.

**RESPONSE:** Admitted.

2. James, Sr. was 45 years old, with grey hair, 5'8" tall and weighed 227 pounds. See the picture of James, Sr. Dep. Ex. 1 and Rog Answer No. 2, App 1 and 6.

**RESPONSE:** Admitted in part and denied in part. Defendants admit that as of January 29, 2014, Plaintiff was 45 years old, was 5'8" tall and weighed 227 pounds, but Defendants deny the remainder of this statement for the reason that the picture of James, Sr., was not taken January 29, 2014 and could have been taken as late as October 29, 2015, when it was produced to Defendants' counsel in connection with mandatory disclosures under F.R.Civ. P. 26.

1

3. Payne admitted in his deposition that he did not thoroughly review the warrant information prior to placing handcuffs on Patrick James, Sr. (Payne Dep. 6:8-7:3, Def. App. 40.)

**RESPONSE:** Denied in part and admitted in part. Denied in that the cited deposition testimony does not include this statement. (Deposition of Payne 6:8-7:3, Def. App. 40). Rasmussen and Payne did in fact review the warrant information (deposition exhibit 21, Def. App. 75). Admitted in that under examination by Plaintiff's counsel, Payne acknowledged in his deposition that he could have "familiarized himself further on information prior to making interaction" with the Plaintiff (Deposition of Payne 4:18 – 24; Plaintiff's App. 10) (See also paragraph 13. of this filing).

4. When Defendant Payne first knocked on the James's door he asked for "Patrick James" without identifying Junior or Senior. (Leah James Dep. 8:5-12, Def. App. 22).

**RESPONSE:** Admitted.

5. Leah refers to Patrick James as her father and her brother is known as "PJ." (Leah James Dep. 11:24-12:4, Def. App. 23).

**RESPONSE:** Admitted

6. The Defendants 30(b)(6) witness admitted that a reasonable officer serving a warrant on a "Junior" would be on notice to at least the possibility that a "Senior" also lived at the address. (Furnish Dep. 6:12-21, App. 14).

**RESPONSE:** Denied. The cited testimony does not in any manner address the possibility that both Patrick James, Jr. and Patrick James, Sr. might live or even be present at the same address. The testimony speaks for itself, and it does not support the purported statement of fact. In fact, the precise question to which Lieutenant Furnish responded "Correct" specifically refers

2

to the fact that the designation "junior" suggests only that there is (or has been) a "senior," not that "senior" is alive or around. (Deposition of Furnish 6:12-21, Plaintiff's App. 14).

7. Leah James answered the door and observed two police officers standing outside. (Leah James Dep. 9:24-10:6, Def. App. 22-23).

**RESPONSE:** Admitted in part for purposes of summary judgment and denied in part. Leah James testified to observing two police officers standing outside but she also testified it was possible there had just been one. (Deposition of Leah James 21:16-19, Def. App. 25).

8. At the time Leah was 16 years old and a sophomore in High School. (Leah James Dep. 6:8-11, Def. App. 22).

**RESPONSE:** Admitted.

9. Leah turned around to get her father. (Leah James Dep. 11:5-11, Def. App. 23).

**RESPONSE:** Admitted, based on the assumption the statement refers to the point in time just after Leah answered the door.

10. The home is small and the bedroom where James, Sr. was located was just off the living room and close to the front door. See diagram, Dep. Ex. 13, App. 3.

**RESPONSE:** Admitted with the qualification that the bedroom where James, Sr. was located was on the same level as the living room. Defendants can neither admit nor deny subjective characterizations that the home is "small" or that the bedroom was "close" to the front door.

11. The police officers followed Leah into the house. (Leah James Dep. 15:5-8, Def, App. 24).

3

**RESPONSE:** Admitted in part and denied in part. Defendants admit Officer Payne followed Leah into the house and deny that Rasmussen did so, although Defendants regard as immaterial whether one or both officers followed Leah into the house.

12. Leah said "Dad, there's somebody here." (Leah James Dep. 14:21-24, Def. App. 24).

**RESPONSE:** Admitted with the qualification that neither Payne nor Rasmussen ever heard Leah James refer to anyone as Dad, nor did they ever hear anyone say anything to indicate that Plaintiff was a father to any female present at 627 34th Street SE on January 29, 2014. (Affidavit of Bruce Payne in Reply to Plaintiff's Resistance to Summary Judgment, Def. Supp. App. 2; Affidavit of Grant Rasmussen, Def. Supp. App. 4).

13. When asked what he could have done differently to avoid the injury to James Sr., Defendant Payne replied that he should have familiarized himself with the warrant and known the specifics of the person he was seeking to arrest. (Payne Dep. 4:20-5:5, App. 10).

**RESPONSE:** Denied. Payne testified he could have familiarized himself *further* with the warrant information and also that he does not think he did anything that would have caused Plaintiff's rotator cuff to be torn. (Deposition of Payne 8: 10 – 16, Def. App. 39). In addition, it is undisputed that Payne used less force when he began putting handcuffs on Plaintiff than he did when putting handcuffs on Patrick James, Jr. (Deposition of Patrick James, Jr. 16: 14-16, Def. Supp. App. 7; 20:22 – 21: 11, Def. Supp. App. 8; 36:19 – 24, Def. Supp. App. 10). There has never been any allegation Patrick James, Jr. was injured as a result of Payne handcuffing him and in fact, Patrick James, Jr. never thought anything of the process. (Deposition of Patrick James, Jr. 36:19 – 37: 6, Def. Supp. App. 10).

14. Defendant Rasmussen was Defendant Payne's training officer at the time of the incident. (Def. App. 75.)

**RESPONSE:** Admitted.

15. Defendant Rasmussen failed to make sure Payne was aware of the details of the warrant prior to allowing him to act as the "contact officer" for the very first time. (Def. App. 75.)

**RESPONSE:** Denied. The document cited does not support this statement, which itself is not a statement of fact. Rasmussen and Payne did review the warrant information (Deposition exhibit 21, Def. App. 75). There is no evidence or authority to suggest there was something additional Rasmussen could have done but failed to do to "make sure" Payne was aware of the details of the warrant. As such, Defendants are unable to cite to anything further in the record regarding this statement.

16. The significant injury caused by Defendant Payne twisting James, Sr.'s arm behind his back was painful. (Dr. Coester Report, App. 7)

**RESPONSE:** Admitted in part for purposes of summary judgment and denied in part. Admitted that a rotator cuff injury may be considered significant and/or painful, but denied that Dr. Coester's Report is an admissible opinion in this case because Dr. Coester was not present at the time of the incident in question, and she has no opinion as to whether any officer used excessive force on or toward Plaintiff. (Affidavit of Dr. Coester, Def. Supp. App. 1).

17. A torn rotator cuff resulting from handcuffing is extremely unusual. (Furnish Dep. 8:8-10, 11:1-16 and 12:14-13:8, App. 14-15).

**RESPONSE:** Defendants can neither admit nor deny this statement as it is unsupported by any objective evidence, and the cited testimony includes no reference to the term "extremely unusual."

18. Defendants 30(b)(6) designee testified that Cedar Rapids police officers made 41,830 arrests from 2010 to 2014. (Furnish Dep. 8:8-10, 11:1-2 and 11-16-25, App. 14-15).

5

**RESPONSE:** Admitted.

19. Furnish also testified that approximately 75% of those arrests included handcuffing. (Furnish Dep. 10:12-22, App. 15).

**RESPONSE:** Admitted in part and denied in part. In the cited portion of Lieutenant Furnish's deposition and elsewhere, he testified that the number of arrests including handcuffing was more than 50% and that he was "unsure" whether it was 75%. (Deposition of Furnish 10:12-22, Plaintiff's App. 15 and 17: 14 – 16, Plaintiff's App. 16).

20. Furnish also admitted that out of the over 31,000 (41,830 x .75 = 31,372) times Cedar Rapids police officers placed suspects in handcuffs from 2010 to 2014; James, Sr. was the only person to complain of a shoulder injury serious enough to require medical attention. (Furnish Dep. 12:14-13:8, App. 15).

**RESPONSE:** Admitted that Lieutenant Furnish agreed Plaintiff is the only person who has "complained that their rotator cuff has been torn as a result the handcuffs process" and that he was not aware of any other complaints from any arrestee about shoulder injuries needing medical treatment. (Deposition of Furnish 12:14-13:8, Plaintiff's App. 15). Denied insofar as Lieutenant Furnish did not attest to the calculation indicated in this statement.

21. Defendant Payne admitted that an arrestee should not suffer a torn rotator cuff if handcuffed correctly. (Payne Dep. 20:19-22, App. 38)

**RESPONSE:** Admitted.

22. James, Sr. states that after he identified himself Defendant Payne grabbed his right arm and twisted it behind his back without saying anything. (James, Sr. Dep. 75:13-76:13, App. 20).

**RESPONSE:** Denied. This statement is contrary to Plaintiff's testimony. Plaintiff testified that after he identified himself, the officer in question "said he got a warrant or something like

that" (Deposition of Plaintiff 75:13 -76:13, Plaintiff's App. 20).  Also, Leah James testified that after Plaintiff affirmed he was Patrick James, police said "you're under arrest."  (Deposition of Leah James 8:8-24, Defendant's App. 22 and 16:22-17:3, Defendant's App. 24).

23. James, Sr.'s right arm was twisted behind his back with such force that his rotator cuff was torn.  (Dr. Coester Report, App. 7.)

**RESPONSE:**  Denied as this statement is not factual in nature but rather argumentative.  Also denied that Payne used any force beyond that necessary to direct Plaintiff's arm behind his back and to turn his wrist so that it faced outward because Plaintiff complied with Payne's request and physical guidance.  (Deposition of Payne 6: 5 – 7, Def. App. 40; 5: 21 – 24, Plaintiff's App. 10; 10: 20, Def. App. 41; Affidavit of Bruce Payne at paras. 5. and 6., Def. App. 35;  Further, Defendants object to the misuse of Dr. Coester's which does makes no reference to force.  See also Affidavit of Dr. Coester, Def. Supp. App. 1.

24. James, Sr. said "ow" and then "went down on one knee."  (James Dep. 66:24-67:15, Def. App. 16).

**RESPONSE:**  Admitted for purposes of summary judgment with the qualification that neither officer saw any indication Plaintiff was in pain (Deposition of Payne 11:18-21, Def. App. 42; Deposition of Rasmussen 58: 2 – 17, Def. App.12).  Furthermore, Patrick James, Jr. testified that he did not hear his dad tell anyone in the room that he had been hurt and that he thinks he would remember if his dad said he had been hurt. (Deposition of Patrick James, Jr. 29: 10 – 21 Def. Supp. App. 9)

25. Leah heard her Dad say "ow, my arm" at the time he was handcuffed and she then saw him "clutching his arm" like he was in pain.  (Leah James Dep. 8:8-24, Def. App. 22 and 28:25-29:4, App. 24).

7

**RESPONSE:** Admitted for purposes of summary judgment, with the qualification that the second record citation does not support the statement.

26. Olivia Evans was downstairs and she heard James, Sr. yell "aah" and when she came upstairs he was holding his arm. (Evans Dep. 11:6-15, App. 26).

**RESPONSE:** Admitted with the qualification that Patrick James, Jr. was downstairs at the time Olivia Evans was downstairs and that after hearing the knock on the door and/or the doorbell, all he heard before going upstairs were footsteps. (Deposition of Patrick James, Jr. 42: 12 – 43:2, Def. Supp. App. 11).

27. James, Sr. went to the Emergency Room right after the Defendants left. James, Sr. Dep. 110:20-24, Def. App. 20, (It was just "a few minutes."); see also the ER record, Def. App. 69, Dep. Ex. 12, App. 2.

**RESPONSE:** Admitted.

28. James, Sr. arrived at the Emergency Room record on January 29, 2014, at 7:16 PM. Def. App. 69.

**RESPONSE:** Admitted.

29. The ER history notes "this is a 45 y.o. male…for evaluation of shoulder pain. Police entered his home this evening, mistaking him for someone else. The patient's right arm was grabbed and twisted behind him, and he subsequently had significant right neck and right shoulder pain."

**RESPONSE:** Admitted, with the qualifications that no record citation is included and, further, that the quoted language reflects what Plaintiff told the ER staff taking his history.

30. The report from treating orthopedic surgeon Dr. Lisa Coester states her causation opinion

8
Case 1:15-cv-00062-JSS   Document 15   Filed 07/05/16   Page 8 of 12

"that the injury occurred as described by Mr. James when a police officer twisted his arm behind his back while placing him in handcuffs." (Dr. Coester Report, App. 7).

**RESPONSE:** Admitted in part for purposes summary judgment and denied in part. Admitted that Dr. Coester's Report includes the language quoted in this statement. Denied that Dr. Coester's Report is an admissible opinion in this case because Dr. Coester was not present at the time of the incident in question, and she has no opinion as to whether any officer used excessive force on or toward Plaintiff. (Affidavit of Dr. Coester, Def. Supp. App. 1).

31. Dr. Coester also noted the injury is painful and that she "would expect someone suffering such an injury to seek medical treatment soon, i.e. within hours or days, of suffering the injury." (Dr. Coester Report, App. 7).

**RESPONSE:** Admitted for purposes of summary judgment.

32. James was ultimately diagnosed with a torn rotator cuff that has to date required two surgeries. (James, Sr. Dep. 133:2-12, App. 22).

**RESPONSE:** Admitted with the qualification that there was no medical evidence of a torn rotator cuff until March 14, 2014, which is 44 days after Payne had physical contact with Plaintiff. (Records of Unity Point Health served November 23, 2015 with Plaintiff's Supplemental Initial Disclosures, at p. 3, Def. App. 68).

33. The Defendants did not retain a medical expert to contest any of Dr. Coester's opinions.
**RESPONSE:** Admitted.

34. James, Sr. filed a complaint with the Cedar Rapids police department (Def. App. 72-73).

**RESPONSE:** Admitted, with the qualification that Plaintiff has already admitted to Defendants' statement regarding this fact and other closely related facts, including the date on

which Plaintiff filed his complaint (April 15, 2015). See Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, at para. 42.

35. Captain Long was assigned to investigate the complaint. (Long Dep. 6:19-24, App. 29).

**RESPONSE:** Admitted.

36. Long was the only person who investigated the complaint. (Long Dep. 8:21-24, App. 29).

**RESPONSE:** Admitted.

37. Long asked Defendant Rasmussen to provide him with a memo of the incident now identified as Deposition Exhibit 21. (Long Dep. 10:15-18, App. 30, and Def. App. 75-76).

**RESPONSE:** Admitted.

38. Deposition Exhibit 21 was not turned over to Plaintiff until after the completion of the depositions of Defendants Payne and Rasmussen, even though Rasmussen reviewed the document in order to prepare for his deposition. (Rasmussen Dep. 24:15-26:8; 50:9-51:24 and 56:14-57:23, App. 32-34).

**RESPONSE:** Admitted, with the qualification that the date on which the memo was produced to opposing counsel is immaterial for purposes of summary judgment. Plaintiff was afforded the opportunity to obtain the equivalent of the memo by deposing Rasmussen and others, as well as by written discovery, and Plaintiff reserved the right to reconvene Rasmussen's deposition. Moreover, the parties had a *bona fide* dispute, in good faith, concerning whether and to what extent the memo was discoverable. Further, Defendants affirmatively state that at the time subject document was produced, both parties stipulated that Defendants did not waive any assertion of privilege or confidentiality as to the memo in question.

39. According to Rasmussen, Defendant Payne was the only officer present at the time

James, Sr.'s rotator cuff was torn. (Def. App. 75)

**RESPONSE:** **A**dmitted in part for purposes of summary judgment and denied in part. Admitted Defendant Rasmussen was not present at the time Defendant Payne made initial physical contact with Plaintiff. Denied to the extent this statement purports to represent that Plaintiff's rotator cuff was torn due to Plaintiff's contact with Payne.

40. As part of his investigation, Long did not interview Defendant Payne. (Long Dep. 11:12-14, App. 30).

**RESPONSE:** Admitted with the qualification that Long testified he could not proceed with the investigation because Plaintiff did not call Long after Long left Plaintiff a message asking him to call. (Deposition of Long 10: 2 – 10; 12: 1 – 15, Plaintiff's App. 30).

41. Craig Furnish was designated by Cedar Rapids to provide its official position on whether Defendant Payne acted as a reasonable officer would act under similar circumstances in handcuffing James, Sr. and in the manner in which he handcuffed James, Sr. (Dep. Ex. 25, p. 4).

**RESPONSE:** Admitted.

42. The City of Cedar Rapids stated that it "ratified the conduct of Officer Payne that [James, Sr.] alleges was wrongful arrest and excessive force." (Furnish Dep. 15:4-8, App. 16).

**RESPONSE:** Admitted.

/s/ *Elizabeth D. Jacobi*
ELIZABETH D. JACOBI (#AT0003763)
Cedar Rapids City Attorney's Office
101 First Street SE
Cedar Rapids, IA 52401
Phone: (319) 286-5025
Fax: (319) 286-5135
Email: e.jacobi@cedar-rapids.org
ATTORNEY FOR DEFENDANTS

Copy to:
David A. O'Brien
Dave O'Brien Law
1500 Center Street NE
Cedar Rapids, IA 52402
Attorney for Plaintiff

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _____, 2016.

By: ___X____ U.S. Mail  _____ FAX
    _____ Hand Delivered  _____ Overnight Courier
    _____ Certified Mail  _____ Other
    ____X____ CM/ECF  _____ Email

Signature  _____