IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

PATRICK JAMES, SR.,

    Plaintiff,

vs.

GRANT RASMUSSEN
and BRUCE PAYNE,

    Defendants.

No. C15-0062

RULING ON PENDING MOTIONS

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................ 1

II.   BACKGROUND .................................................. 2

III.  MOTION TO STRIKE ........................................... 3

IV.  PLAINTIFF'S MOTION IN LIMINE ............................. 7

V.   DEFENDANTS' MOTION IN LIMINE ............................ 9
    A.   Captain John Beckman ..................................... 9
    B.   Dr. Lisa Coester ........................................ 12
    C.   "Mere Fact of Injury" ................................... 14
    D.   Requirement of Additional Investigation ................. 15
    E.   Remaining Issues ........................................ 16

VI.  ORDER ....................................................... 17

## I. INTRODUCTION

On the 11th day of October 2016, this matter came on for telephonic hearing on the Motion to Strike Any Expert Testimony From Defendants (docket number 32) filed by the

Plaintiff on September 15, 2016. Plaintiff was represented by his attorney, David A. O'Brien. Defendants were represented by their attorneys, Elizabeth D. Jacobi and Patricia Kropf.

On the 14th day of October 2016, this matter came on for telephonic hearing on the Motion in Limine (docket number 31) filed by the Plaintiff on September 15, 2016, as supplemented (docket number 35) by the Plaintiff on September 27; and the Motion in Limine (docket number 42) filed by Defendants on October 4, 2016. The parties were represented by the same attorneys set forth above.

## II. BACKGROUND

Defendants Grant Rasmussen and Bruce Payne are employed as police officers for the City of Cedar Rapids. On January 29, 2014, Defendants approached a residence on 34th Street SE to execute an arrest warrant on Patrick James, Jr. While the details may be in dispute, Defendants initially arrested Patrick James, Sr., the plaintiff in this action, instead. After the mistake was discovered, the handcuffs were removed from Plaintiff and the officers arrested Patrick James, Jr., who was also present in the residence. Plaintiff claims he was injured by the officers while being arrested.

On July 16, 2015, James sued Rasmussen and Payne, alleging use of excessive force (Count I) and arrest without probable cause (Count II). On August 12, 2015, Defendants filed an answer, generally denying the material allegations and asserting certain affirmative defenses, including qualified immunity.[1] On August 5, 2016, the case was referred to me for all further proceedings in accordance with 28 U.S.C. § 636(c) and the consent of the parties. Trial is scheduled on October 31, 2016.

---

[1] The City of Cedar Rapids was named as a defendant in the complaint. However, on July 19, 2016, the City was dismissed by Judge Edward J. McManus on its motion for summary judgment.

## III. MOTION TO STRIKE

On March 15, 2016, Defendants timely served Plaintiff with their "disclosure of expert testimony."[2] Defendants identified Wayne Jerman, the Cedar Rapids Chief of Police, as an expert witness. The notice described the anticipated testimony:

> Chief Jerman will testify with respect to certain factual matters about the Cedar Rapids Police Department which are not in the nature of expert testimony, and this testimony would not include evidence under Federal Rules of Evidence 702, 703 and 705 as contemplated by Fed. R. Civ. P. 26(a)(2)(C). With respect to other testimony Chief Jerman may provide which may be regarded as expert testimony, the subject matter on which Chief Jerman would present evidence under Federal Rules of Evidence 702, 703 and 705 concerns police officers' use of force, execution of arrest warrants and field training. In summary, the facts and opinions to which Chief Jerman is expected to testify are the substance of the Cedar Rapids Police Department's Directives Manual, the adoption and implementation of said Manual, and, based in whole or in part upon the sworn testimony of parties hereto, his opinions concerning Defendants' adherence to departmental directives.

Defendants' Disclosure of Expert Testimony (docket number 32-2), ¶ 3 at 1-2.

On August 10, 2016, Defendants supplemented their disclosure of expert testimony as follows:

> Cedar Rapids Police Chief Wayne Jerman is expected to testify that at the time of the events which gave rise to this litigation, Defendants acted in conformity with all applicable directives, standards and requirements of the Cedar Rapids Police Department.

---

[2] A copy of Defendants' disclosure of expert testimony is attached to Plaintiff's motion to strike as Exhibit A. *See* docket number 32-2.

Supplement to Defendants' Disclosure of Expert Testimony (docket number 32-3), ¶ 1 at 1. According to the supplement, "[t]he facts upon which Chief Jerman bases his opinion are set forth in deposition testimony." *Id.*, ¶ 2.

Plaintiff asks the Court to strike any expert testimony because Defendants "fail[ed] to comply with the disclosure requirements of F.R.C.P. 26(a)(2)(B)."[3] Plaintiff also asserts Defendants' disclosure fails "to meet the minimum criteria necessary to provide expert testimony pursuant to FED. R. EVID. 702." In response, Defendants argue that Chief Jerman is not an expert required to provide a written report under RULE 26(a)(2)(B), and they are only required to comply with the requirements of RULE 26(a)(2)(C).

If a witness is "retained or specially employed to provide expert testimony," or if the witness's duties as an employee "regularly involve giving expert testimony," then the disclosure must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). It is undisputed that Chief Jerman's disclosure was not accompanied by a written report as described in RULE 26(a)(2)(B).

---

[3] Motion to Strike (docket number 32) at 1.

If a witness is not retained or specially employed to provide expert testimony and does not regularly give expert testimony as part of his job duties, however, then the witness is not required to provide a written report. Instead, the expert witness disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

FED. R. CIV. P. 26(a)(2)(C). The summary required by RULE 26(a)(2)(C) is "considerably less extensive," than the written report required by RULE 26(a)(2)(B). FED. R. CIV. P. 26 Advisory Committee Notes (2010 Amendment). It is this standard to which Defendants argue they should be held.

Plaintiff's brief in support of his motion to strike is devoted entirely to the written report requirements of RULE 26(a)(2)(B). The Court must first determine, however, whether a written report was required. In an affidavit filed with Defendants' resistance to the instant motion, Chief Jerman avers that his duties as Chief of Police do not regularly involve giving expert testimony and, in fact, he has not previously testified as an expert on behalf of the City.[4]

I have previously concluded that a police captain was not "retained or specially employed" to provide expert testimony and, therefore, was not required to provide a written report in compliance with RULE 26(a)(2)(B). *Greenhaw v. City of Cedar Rapids*, 255 F.R.D. 484 (N.D. Iowa 2009). Other courts have reached similar conclusions. *See, e.g., Kamel v. Whitfield*, 2010 W.L. 4531379 (E.D. Mich. 2010) (concluding a police sergeant was not retained or specially employed to provide expert testimony, and was not required to submit a written report in compliance with 26(a)(2)(B)); *Coates v. Powell*,

---

[4] *See* Affidavit of Wayne Jerman (docket number 41) at 11.

2009 WL 1310302 (W.D. Mo. 2009) (reaching a similar conclusion with a lieutenant in the state patrol who had been identified as an expert witness).

I conclude that Chief Jerman was not retained or specially employed to provide expert testimony in the case and is not "one whose duties as the party's employee regularly involve giving expert testimony." Accordingly, compliance with RULE 26(a)(2)(B) is not required. Instead, Defendants must comply with the requirements of RULE 26(a)(2)(C). Specifically, their disclosure must identify the "subject matter" of Chief Jerman's expert testimony and a "summary" of his opinions.

I believe Defendants' expert testimony disclosure, as supplemented, easily meets the first requirement. The initial disclosure states unequivocally that "the subject matter on which Chief Jerman would present evidence under FEDERAL RULES OF EVIDENCE 702, 703 and 705 concerns police officers' use of force, execution of arrest warrants and field training."

Defendants' compliance with the second requirement — disclosure of a summary of the opinions to which Chief Jerman is expected to testify — is not as clear-cut. The initial disclosure states that Chief Jerman is expected to testify regarding "his opinions concerning Defendants' adherence to departmental directives." While the disclosure states Chief Jerman will testify "concerning" Defendants' adherence to departmental directives, it does not explicitly state whether Chief Jerman believes Defendants adhered or failed to adhere to the directives. This potential ambiguity was resolved, however, in the supplemental disclosure, which states unambiguously that Chief Jerman is expected to testify that "Defendants acted in conformity with all applicable directives, standards and requirements of the Cedar Rapids Police Department." I believe the supplemental disclosure adequately summarizes Chief Jerman's expected opinion testimony. The disclosure refers Plaintiff to depositions and other documents for the facts underlying his

opinions. Under the circumstances of this case, I believe that also adequately complies with the RULE.

In summary, because Chief Jerman was not retained or specially employed to provide expert testimony, and because his duties as Chief of Police do not regularly involve giving expert testimony, a written report dictated by RULE 26(a)(2)(B) was not required. Instead, Defendants were required to comply with RULE 26(a)(2)(C). I believe they have done so. Accordingly, Plaintiff's motion to strike will be denied.

## IV. PLAINTIFF'S MOTION IN LIMINE

Plaintiff's motion *in limine*, as supplemented, as in six parts. The first three parts are undisputed. Neither party will make any reference to any settlement discussions. Neither party will make any reference to the fact that motions *in limine* were filed. Neither party will request that the other party stipulate to the admissibility of any evidence or to any facts in the presence and hearing of the jury.

Part 4 of Plaintiff's motion *in limine* asks the Court to prohibit Defendants from calling any witness not previously identified. Defendants do not generally object, but reserve their right to call witnesses "used solely for impeachment." Generally speaking, neither party will be permitted to call any witness not identified in the Final Pretrial Order. FED. R. CIV. P. 16 Advisory Committee Note (1983 Amendment to Subdivision (e)). *See also Zeigler v. Fisher-Price, Inc.*, 302 F. Supp. 2d 999, 1019-20 (N.D. Iowa 2004). However, the Court may allow a witness to testify for impeachment, if the witness' testimony could not have been reasonably anticipated prior to trial.

Part 5 of Plaintiff's motion *in limine* asks that Defendants be prohibited from introducing any expert opinion testimony, as previously argued in Plaintiff's motion to strike. The Court has denied Plaintiff's motion to strike, and Defendants will be permitted to elicit opinions from Chief Jerman that Defendants "acted in conformity with all applicable directives, standards and requirements of the Cedar Rapids Police Department."

7

Part 6 of Plaintiff's motion *in limine* refers to circumstances surrounding the arrest of Plaintiff's son, Patrick James, Jr. The evidence in that regard can apparently be divided into two parts: the events which occurred inside the house when it was discovered the officers had arrested the wrong person, and then arrested James Jr.; and the events outside the house as James Jr. was led to the squad car and talked to an officer while in the squad car. Defendants argue that the fact Olivia Evans took a video of James Jr. walking to the squad car, instead of assisting James Sr. (who was allegedly injured) is relevant to whether James Sr. suffered an injury. Similarly, Defendants argue that the fact James Jr. did not refer to his father's injury while sitting in the squad car is relevant to the issue of whether James Sr. did, in fact, suffer an injury. I disagree. As noted by Mr. O'Brien at the hearing: "It's not like James Sr. is laying in a pool of blood on the living room floor." While James Sr. complained of pain, his injury was apparently not diagnosed until several months later. It is not surprising that James Jr., who had just been arrested, was not focused on his father's complains of pain.[5] Similarly, it is a stretch to argue that Olivia Evans taking a video, rather than attending to James Sr., is relevant to the issue of whether James Sr. suffered an injury. The probative value of the evidence, if any, is substantially outweighed by a danger of confusing the issues or misleading the jury and, therefore, will be excluded. FED. R. CIV. P. 403.

What was done and what was said inside the house, however, is another matter. I believe any of the persons inside the house can be questioned regarding what they saw and what they heard. The record underlying the motion *in limine* is imprecise regarding the substance of each witness' testimony. Accordingly, the Court cannot rule in advance of trial on any potential objections to questions regarding the events inside the house. If

---

[5] James Jr. was apparently upstairs when James Sr. was initially placed in handcuffs and it is unclear to the Court whether James Jr. was present when James Sr. was complaining of pain in his shoulder.

8

a party believes a trial question is objectionable, then the party may make an appropriate objection at that time. Generally, however, the Court believes that anything that was said or done in the house surrounding the arrest and subsequent release of Plaintiff is admissible.

## V. DEFENDANTS' MOTION IN LIMINE

### A. Captain John Beckman

Defendants' motion *in limine* is also in six parts. First, Defendants move to exclude "some or all" of the testimony of John Beckman, a retired police captain who has been identified by Plaintiff as an expert witness. Defendants argue that Beckman should not be permitted to opine whether there was probable cause to arrest Plaintiff, or whether Plaintiff was subjected to excessive force. Defendants also ask that Beckman be prohibited from commenting on the credibility of witnesses. Plaintiff agrees that Beckman cannot say "there was no probable cause or there was probable cause," but argues that he can be asked whether there was "any reason" for placing Plaintiff under arrest.

Captain Beckman signed two written reports, in the form of letters to Plaintiff's attorney, dated January 9, 2016 and February 20, 2016.[6] Defendants also took Beckman's deposition. In his first letter, Beckman describes his understanding of the facts, based on information provided to him by Plaintiff's attorney. Beckman then expresses two opinions: First, "the officers' aggressive manner in which they went 'hands on' with James, Sr., was unwarranted and excessive given the circumstances"; and second, that "once James, Sr., indicated that his right shoulder was injured, . . . the officers failed to address this potential injury as required of them. . . ." In his final paragraph, however, Beckman also opines that Defendants "did not have probable cause to arrest" Plaintiff. In a letter dated February 20, 2016, Beckman reviewed additional information provided to him, and

---

[6] Copies of the letter were attached to Defendants' motion *in limine* as Exhibits A1 and A2. *See* docket number 42, pp 5-25.

9

confirmed his opinion that Defendants did not have probable cause to arrest Plaintiff and that excessive force was used against him.

To determine the admissibility of Captain Beckman's testimony, the Court first considers the testimony of expert witnesses generally. A witness who is qualified as an expert may render opinions which "will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. *See also Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). An expert may base his opinion on facts provided to him. FED. R. EVID. 703. "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). However, "[o]pinions that 'merely tell the jury what result to reach' are not admissible." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010). With these general principles in mind, the Court now turns to the circumstances in this case.

Plaintiff asserts in Count II of his complaint that he was arrested without probable cause. Most "wrongful arrest" cases involve a warrantless arrest and a dispute whether the officers had probable cause to arrest the subject. In this case, however, it is apparently undisputed that the officers did not have a warrant for the arrest of Plaintiff, nor was there probable cause to arrest Plaintiff. Rather, Defendants note there was a valid warrant for the arrest of James Jr., and argue the mistaken arrest of James Sr. was reasonable under the circumstances.

In *Hill v. Scott*, 349 F.3d 1068 (8th Cir. 2003), officers had a warrant to arrest Brian Walter Hill, but mistakenly arrested Brian Arthur Hill. The Court noted that "[t]he Fourth Amendment right of citizens not to be arrested without probable cause is clearly established." *Id.* at 1072. The Court found that in those cases where a mistaken arrest is based on a facially valid warrant, the "rule" is that the Fourth Amendment is not violated "if the officers reasonably mistook the arrestee for the person named in the warrant." *Id. See also Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir.

2010) ("In the wrongful arrest context, officers are entitled to qualified immunity 'if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable.'"). The question of whether the mistake was objectively reasonable is answered "by looking at the totality of the circumstances surrounding the arrest to determine its reasonableness." *Hill*, 349 F.3d at 1072.

Defendants apparently do not challenge the expertise of Captain Beckman, a 35-year veteran of the Waterloo, Iowa Police Department. As a qualified expert, I believe Beckman can testify regarding proper police procedures and methods. Such testimony will help the jury understand the evidence and resolve factual disputes. I do not believe, however, that Beckman can opine regarding whether Defendants' mistake in arresting Plaintiff was objectively reasonable. The jury must decide that question based on the totality of the circumstances. *Peterson*, 60 F.3d at 475 (an expert's opinion concerning the reasonableness of the officers' conduct was not a fact-based opinion, but a statement of a legal conclusion). *See also Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (finding testimony that defendant's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper" was inadmissible because it "merely told the jury what result to reach"). *But see United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (considering a "very close question" "measured in inches, not feet," the Court found it was not error to permit two lay witnesses to testify regarding their personal assessments of whether the use of force was "legitimate," while differentiating an inadmissible opinion that the actions were "objectively unreasonable").

In summary, on the issue of whether Plaintiff has an actionable claim based on his wrongful arrest, I believe Captain Beckman can testify regarding proper police procedures and methods in order to help the jury "to understand the evidence or to determine a fact in issue." The "fact in issue" is whether, considering all of the circumstances, Defendants "reasonably mistook" Plaintiff for the person named in the warrant. Beckman may not

11

opine regarding whether he believes Defendants' mistake was objectively reasonable. The jury will make that call.

I reach a similar conclusion regarding expert testimony on the use of "excessive" force, as alleged in Count I of the complaint. Testimony by a qualified expert regarding police practices and procedures will help the jury understand the evidence and determine facts in issue. Accordingly, Captain Beckman may testify regarding proper police practices in placing a subject under arrest and placing the subject in handcuffs. He may not opine, however, regarding whether he believes the force used in this case was excessive. Rather, his testimony is limited to the proper procedures to be employed under various circumstances. The jury will decide whether the circumstances in this case justified the force which the jury finds to have been employed by Defendants. Beckman will be permitted to testify that he is unaware of other circumstances where a subject suffered a torn rotator cuff while being handcuffed, but the jury will be instructed that the mere fact an injury occurred does not mean excessive force was applied.

### B. Dr. Lisa Coester

The Court now turns to the second issue raised by Defendant's motion *in limine*. Plaintiff intends to call Lisa Coester, M.D., to testify regarding Plaintiff's injuries and treatment. Plaintiff also hopes to have Dr. Coester testify that his torn rotator cuff was caused by the events of January 29, 2014. Defendants ask the Court to exclude "some or all" of Dr. Coester's testimony.

It seems clear that Dr. Coester can testify regarding the nature and extent of Plaintiff's injury. She can also testify regarding his treatment and prognosis. I believe Dr. Coester can also testify regarding the physiology of the shoulder and the mechanics of a rotator cuff tear. In addition, I believe Dr. Coester can opine regarding whether Plaintiff's injury is "consistent" with the events of January 29. The fighting issue appears to be whether, in addition to testifying that Plaintiff's injuries were "consistent" with the

12

events giving rise to this action, she can also testify that the events of January 29 "caused" Plaintiff's injury.

Defendants do not cite any authority directly on point. Plaintiff cites *Doe v. Central Iowa Health System*, 766 N.W.2d 787 (Iowa 2009). There, the plaintiff sued a hospital claiming it unlawfully disclosed his medical and/or mental health information, causing him mental anguish and severe emotional distress. Finding the plaintiff failed to produce sufficient evidence to support his claim that the disclosures were the cause of his emotional distress, the Court affirmed the district court's granting of the defendants' motion for judgment notwithstanding the verdict. *Id.* at 788. The Court noted that "[w]hen the causal connection between the tortfeasor's action and the plaintiff's injury is within the knowledge and experience of an ordinary lay person, the plaintiff does not need expert testimony to create a jury question on causation." *Id.* at 793. Expert testimony *is* required, however, when such common knowledge is lacking.

> When the causal connection between the tortfeasor's actions and the plaintiff's injury is not within the knowledge and experience of an ordinary layperson, the plaintiff needs expert testimony to create a jury question on causation.

*Doe*, 766 N.W.2d at 793 (citing *Bradshaw v. Iowa Methodist Hosp.*, 101 N.W.2d 167, 171 (Iowa 1960)).

A review of Iowa cases reveals that expert testimony regarding causation is not only permitted, it is often required. *See, e.g.*, *Hansen v. Central Iowa Hosp. Corp.*, 686 N.W.2d 476, 485 (Iowa 2004) ("The rule is that expert testimony indicating *probability* or *likelihood* of a causal connection is sufficient to generate a question on causation.") (italics in original). In a worker's compensation context, the Iowa Supreme Court has repeatedly held that "[w]hether an injury has a direct causal connection with the employment or arose independently thereof is essentially within the domain of expert testimony." *Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845 (Iowa 1995).

To recover on his claim, Plaintiff must show that his "theory of causation is reasonably probable — not merely possible — and more probable than any other hypothesis based on such evidence." *Henchey v. Dielschneider*, 797 N.W.2d 621 (table) (Iowa App. 2011) (citing *Doe*, 766 N.W.2d at 792). Here, the issue of whether the events of January 29 caused Plaintiff's injury, and necessitated surgery, is not within the knowledge and experience of an ordinary lay person. Accordingly, it is entirely appropriate, and indeed necessary, that Plaintiff offer expert testimony on causation. If Dr. Coester testifies that she believes Plaintiff's torn rotator cuff was caused by the events giving rise to this action, then she is certainly subject to cross-examination regarding the basis for her opinion. The jury is free to accept or reject her testimony. The jury's determination in that regard may be based, in part, on her expertise, her knowledge of the facts underlying the events, Plaintiff's prior medical history, and other relevant circumstances. The weight and credibility to be given her expert testimony is for the jury. *Dunlavey*, 526 N.W.2d at 853.

### C. "Mere Fact of Injury"

Next, Defendants ask the Court to exclude "any examination, testimony, reference or argument that the mere fact of injury, without more, is proof that he was subjected to excessive force." In their brief, Defendants argue that "[j]ust as excessive force may not result in any injury, as for example where an unusually resilient individual is subjected to excessive force; it is possible for an injury to result without any excessive force."[7] I agree.

Obviously, Plaintiff is entitled to offer testimony regarding the events on January 29, 2014, including evidence regarding his claim that he was injured while being arrested. The issue raised by Defendants is one of *law*, not *evidence*. The jury may consider Plaintiff's injury, together with all of the other facts and circumstances, in deciding

---

[7] Defendants' Brief (docket number 42-1) at 7.

whether the force applied by Defendants was excessive. But the jury will be instructed that the mere fact Plaintiff was injured does not mean excessive force was used.

### D. Requirement of Additional Investigation

Defendants ask the Court to exclude any evidence that Defendants "could have or should have obtained additional information concerning Patrick James, Jr. prior to executing the warrant for his arrest." Plaintiff argues that the information provided in the arrest warrant should have alerted Defendants that Plaintiff was not the person identified in the warrant, but "to the extent the Defendants claim confusion," information readily available on the subject "is relevant on the issue of the reasonableness of the Defendants' conduct."

In *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999), the Court considered whether an officer was entitled to qualified immunity after arresting the owner of a store following an altercation in the store. The officer spoke only briefly with the owner and "ignored plainly exculpatory evidence that negated the intent required for simple assault." *Id.* at 651. The Court held that when determining whether probable cause exists to make a warrantless arrest, law enforcement officers "have a duty to conduct a reasonably thorough investigation." *Id.* at 650.

Four years later, in *Hill v. Scott*, 349 F.3d 1068 (8th Cir. 2003) — a case involving a mistaken arrest with a valid warrant — the Court distinguished the holding in *Kuehl*. The Court noted that the information known to the officers regarding the person named in the warrant and the person actually arrested was "remarkably close." *Id.* at 1072. Their first and last names were identical, they were only two years apart in age, and there was only one inch difference in height and 25 pounds difference in weight. *Id.* The person arrested was African American, and he argued the officer should have known the person listed on the arrest warrant was Caucasian, because the warrant said he had green eyes. The plaintiff conceded, however, that "some African Americans (though rare) have green

15

eyes." *Id.* The Court in *Hill* rejected the plaintiff's argument that the defendant should have conducted a further investigation.

> The question is, how much investigation does the Constitution require? In light of all the circumstances, we hold Scott had sufficient consistent identifying information to reasonably conclude the warrant was for appellant Hill and no reasonable officer would have known failing to investigate further would violate the Fourth Amendment.

*Hill*, at 1074.

As discussed above, one of the issues for the jury in this case is whether, considering the "totality of the circumstances," Defendants reasonably mistook Plaintiff for the person named in the arrest warrant. *Id.* at 1072-73. Here, the arrest warrant indicated the person being sought was 20 years old. Plaintiff is 45 years old and looks it. That is, the description on the warrant was not "remarkably close" to Plaintiff. Under these circumstances, I believe if other information was readily available to Defendants when they executed the arrest warrant, that is part of the "totality of the circumstances" which the jury may consider in determining whether Defendants' mistake was reasonable.

### E. Remaining Issues

Defendants ask that witnesses be prohibited from providing testimony "which goes beyond their own personal knowledge and purports to opine on a legal standard or otherwise purports to tell the jury how it should determine any ultimate question of fact." If a witness is asked a question which calls for hearsay or is otherwise objectionable, then an appropriate objection may be made at trial. The parameters of expert testimony have been described above.

The parties may not offer evidence or argument that the City of Cedar Rapids may indemnify Defendants for any compensatory damages which are imposed. At the hearing, the parties discussed the issue of whether Defendants' personal financial information will

be submitted as relevant to Plaintiff's punitive damage claim, but the issue was not resolved and the Court makes no ruling at this time.

## VI. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion *in Limine* (docket number 31) is **GRANTED in part** and **DENIED in part** as set forth above.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Any Expert Testimony (docket number 32) is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion *in Limine* (docket number 42) is **GRANTED in part** and **DENIED in part** as set forth above.

DATED this 20th day of October, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA