IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| PATRICK JAMES, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>GRANT RASMUSSEN, individually and as a Police Officer for the City of Cedar Rapids, Iowa; and<br>BRUCE PAYNE, individually and as a Police Officer for the City of Cedar Rapids, Iowa,<br><br>Defendants. | No. C15-0062<br><br>ORDER DENYING MOTION FOR NEW TRIAL |

This matter comes before the Court on the Motion for New Trial on Damages Against Defendant Payne Only (docket number 70) filed by the Plaintiff on November 29, 2016, and the Resistance (docket number 73) filed by Defendant Bruce Payne on December 13. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## I. BACKGROUND

On January 29, 2014, Defendants Grant Rasmussen and Bruce Payne, both police officers with the City of Cedar Rapids, approached the residence of Plaintiff Patrick James, Sr. The officers had a warrant for the arrest of Patrick James, Jr. Payne entered the house with permission and asked Plaintiff whether he was Patrick James. When Plaintiff answered affirmatively, Payne placed James under arrest. Almost immediately, however, it was determined that Plaintiff was not the subject of the warrant, and Patrick James, Jr. was in the basement. Plaintiff was released within a minute without ever having

left his living room. James argues, however, that he suffered a torn rotator cuff as the result of Payne's use of excessive force, and required surgery.

On July 16, 2015, James filed this action against the City of Cedar Rapids, Rasmussen, and Payne, claiming damages for wrongful arrest and the use of excessive force. The City of Cedar Rapids was dismissed on summary judgment on July 19, 2016. The claims against Rasmussen and Payne came on for trial to a jury on October 31, 2016. On November 3, the jury returned a verdict finding in favor of Rasmussen on both claims, and finding against Payne on both claims. The jury found James' damages for wrongful arrest to be $22,500, and found damages for the excessive use of force to be $7,500. Judgment was entered accordingly.

James asks the Court to order a new trial on the issue of damages only. James asserts a reasonable jury could have concluded $22,500 was fair compensation for the wrongful arrest, but argues that no reasonable jury could conclude that $7,500 was fair compensation for the use of excessive force. In resisting the motion for new trial, Payne states in a footnote that he "does not dispute the possibility $22,500 represents the value the jury placed on James' non-medical damages." Payne argues, however, that a new trial is not justified.

## II. DISCUSSION

The jury found Payne wrongfully arrested James and, in the process, used excessive force. In awarding damages for wrongful arrest, it is unclear whether the jury considered James' physical injuries in determining appropriate damages. Absent James' claim of physical injury, the damages associated with the wrongful arrest would seem to be nominal. That is, while the jury could conclude James was wrongfully arrested, he was in custody for less than one minute. The record was imprecise regarding whether he was even fully handcuffed. While his daughter and his son witnessed the episode, it is difficult to imagine that he suffered $22,500 worth of emotional distress.

2

It is possible the jury conflated James' wrongful arrest with his claim of physical injury. The damages award on the wrongful arrest claim ($22,500) approximates the amount of medical bills ($22,020.72) which James would have to repay if recovered in this lawsuit.[1] See Plaintiff's Exhibit 15 (docket number 63-17). The jury may have included the subrogated medical bills in its award for damages on the wrongful arrest claim.

The jury awarded substantially less ($7,500) on the excessive force claim. How the jury arrived at the amount of damages is unknowable. It should be noted, however, that the jury could award damages on the excessive force claim *without* concluding that James suffered a torn rotator cuff as a result of the excessive force. That is, the jury could have found Payne used excessive force, but did not cause James' injury. Plaintiff's own expert testified that he had never heard of a person suffering a rotator cuff tear as a result of being arrested and handcuffed.

FEDERAL RULE OF CIVIL PROCEDURE 59(a)(1)(A) authorizes the Court to grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." In *White v. Pence*, 961 F.2d 776 (8th Cir. 1992), the Court discussed at length the standard to be applied by the trial court in considering a motion for new trial. "[T]he standard is simply one as to whether a miscarriage of justice had occurred." *Id.* at 778. *See also Murphy v. Missouri Dept. of Corrections*, 506 F.3d 1111, 1116 (8th Cir. 2007) ("The grant of a motion for new trial is appropriate only if 'the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice.'"); *Beckman v. Mayo Found.*, 804 F.2d 435, 439 (8th Cir. 1986) ("The district court can only disturb a jury verdict to prevent a miscarriage of justice.").

---

[1] The parties also stipulated that James paid $45 toward the medical bills and still owed $2,452.42. *See* Plaintiff's Exhibit 15 (docket number 63-17).

3

When a plaintiff argues that they deserve a new trial because the jury's damage award was inadequate, the court "will not reverse a verdict on these grounds unless there has been plain injustice or a monstrous or shocking result." *First State Bank of Floodwood v. Jubie*, 86 F.3d 755, 759 (8th Cir. 1996). The Eighth Circuit Court of Appeals has stated repeatedly that it "will not reverse a trial judge's denial of a motion for new trial on the grounds of an inadequate or excessive jury verdict except in those rare cases in which there is plain injustice or a monstrous or shocking result." *Novak v. Gramm*, 469 F.2d 430, 434 (8th Cir. 1972).

"In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence — it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *White*, 961 F.2d at 780 (quoting *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir. 1984)). The Court's discretion is not boundless, however, and it is not "free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* That is, a "trial judge may not usurp the functions of a jury which weighs the evidence and credibility of witnesses." *Id.* at 781.

With these general principles in mind, the Court turns to the arguments made by James in his motion for new trial. James asserts he is entitled to a new trial, on the issue of damages only, for two reasons: First, James argues that questions posed by the jury suggest it "got off on a tangent not supported by the record." Second, James argues that Defendants' counsel improperly asked the jury in closing arguments "to ignore the court's instruction on aggravation of pre-existing condition."

Following closing arguments, the jury retired to deliberate at approximately 3:48 p.m. on November 2. At approximately 4:15 p.m., the jury submitted the following written questions:

4

> With respect to the medical expenses listed how much of this
> is actually the personal responsibility of the James family?
>
> Is Mr. James's insurance title IXX [sic]?

After consulting with the attorneys, the Court replied, without objection, as follows:

> The parties have stipulated that the $22,020.72 paid by insurers would have to be repaid to the insurers. Mr. James paid $45, and is personally responsible for the balance of $2,452.42.
>
> The information requested in your second question is not part of the record.

James asserts that the questions "establish[] that the jury got off on a tangent not supported by the record and not in compliance with the court's instructions, causing it to render an unjust verdict, *i.e.*, in weighing the verdict the jury put factors on the scales of justice that did not belong and thus, justice was not done."[2] I disagree. The first question and answer simply point the jury to the evidence regarding the medical bills, as contained in Plaintiff's Exhibit 15. The second question raises a fact which was not part of the record, and the Court advised the jury as much, after consulting with counsel. Nothing about the questions suggests the jury "got off on a tangent" which improperly affected their verdict.

James also argues that comments made by Defendants' counsel in her closing argument improperly influenced the jury's verdict. James did not submit a transcript of the closing argument, nor did he submit a transcript of the allegedly offending statements. I have no independent recollection of Defendants' argument, Plaintiff's objection, or my ruling on the objection. Accordingly, I am unable to conclude the argument was inappropriate, or that it was prejudicial.

---

[2] Plaintiff's Motion for New Trial (docket number 70) at 2, ¶ 5.

The jury's verdict of $22,500 for the wrongful arrest seems to be excessive. *If* the jury found that Payne's use of excessive force caused James' injury, then the award of $7,500 for excessive force appears to be inadequate. It is possible, however, that the jury equated James' physical injury with the wrongful arrest and intended to include damages for his injury in its award for the wrongful arrest. It is also possible the jury concluded that James failed to prove that his rotator cuff tear was caused by Payne's excessive use of force. In that circumstance, the jury could properly exclude medical expenses in determining appropriate damages for the excessive use of force.

The medical expenses — including those paid by insurers, the amount paid by James, and the balance owed — total $24,518.14. The total verdict was $30,000. I conclude that allowing the total verdict of $30,000 to stand would not result in a "miscarriage of justice." *White*, 961 F.3d at 778. This is not one of "those rare cases in which there is plain injustice or a monstrous or shocking result." *Novak*, 469 F.2d at 434. Accordingly, I find the motion for new trial on damages should be denied.

### III. ORDER

For the reasons set forth above, Plaintiff's Motion for New Trial on Damages (docket number 70) is **DENIED**.

DATED this 22nd day of December, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA